Case number 15-5117, National Security Counselors et al. Appellants, Truthout v. United States Department of Justice. Mr. McClanahan for the appellants, Mr. Hudak for the appellee. Good morning, Your Honors. My name is Kel McClanahan. I'm here on behalf of the appellants. And Because this case involves two different agencies, I'm going to treat them differently in my discussions. Please do not assume that because I don't go into the Civil Division's actions early, I'm not getting around to that, but the FBI is the thornier problem of this case. At its core, this case is about the definition of what a reasonable cost under FOIA is. The agency would have this court accept that any cost is reasonable as long as it is less than the absolute maximum that they could possibly charge for any format. And at its simplest, that just can't be because FOIA forbids agencies to charge more than the direct costs of duplicating records. And direct costs are the costs that were incurred. And if an agency were to charge $1,000 to produce something in paper form, but it would cost them $10 to produce it in CD form, they can't charge $900 for it to produce a CD simply because that's less than what it would charge to produce a paper copy. And that's really what this boils down to is... Are you saying that FOIA requires the agency to use the most cost-effective means to duplicate as opposed to whatever means they think is reasonable and in charge of the actual cost of that duplication, that manner of duplication? No, Your Honor. The language that the FOIA uses is reasonable costs. And reasonable costs are costs that are reasonable. We are not saying nor have we ever said that they must use the most cost-effective mechanism. We are saying that they must use a mechanism that is reasonable. And that's only half of the argument. The second half of the argument is that a direct cost is the cost of that reproduction in that format, which is where I was going previously. CDs are much cheaper to produce than paper. Everybody knows this. And yet, the FBI's main argument for why this policy is reasonable is that it's cheaper than if we did it on paper. And that's actually what the district judge cited to, well, there is no harm here. There is no harm, no foul, because they could have charged much more if they had produced it on paper. Well, we didn't request it on paper, and FOIA requires them to give us a CD if we ask for a CD. And that's really where it comes from. Can I ask you this? Let's assume, just for purposes of argument, that you're right, that you can't just justify an electronic charge by virtue of it being less than the paper charge. So then we're talking about what's reasonable in the realm of electronic charges. The FBI, I think in the affidavit, says that the charge has nothing to do with the cost of the CD itself. That's just nominal. So we're not talking about the actual physical cost of the CD. What we're talking about is the charge for all the stuff that attends preparing a CD that's suitable for release. The labor that goes into it. Yeah. Yes. Yeah, and as to that, if the $500 per CD is just a proxy, so that what's really going on is that it's just the more documents there are, the more labor there is involved in preparing the documents for release. There's nothing wrong with doing it in $500 increments per CD if what you're really talking about is an accumulation of charges because of the labor that entails additional documents. On paper, that is correct, and that's the argument that they made. The problem is, and that's an excellently timed question because that was actually where I was going to with my next point, the FBI did not prove what you just said. They did not prove that it is cheaper, cheaper is the wrong word, that the direct cost of producing 44 CDs is more than what they would charge for 44 CDs. Or, more importantly, that putting 23,898 pages on one CD and running it through that integrity process would not be less expensive than putting $710. I actually did the math myself that we put in here on the brief on page 12. We put in the briefs before the district court where I demonstrated through no illusory evidence. I did simple arithmetic and I said, look, if the agency, using the information that they gave for how much they charge people or for how much they pay personnel, if a GS-13, the highest ranking person that does FOIA processing and integrity, did the entire thing herself, every extra 500 pages they put on that CD would have to increase the cost by over 30% in order to make this not them charging more than the direct cost. What it is, and this is something that they seized on and the district court seized on, we concede that for one CD containing 500 pages, $15 is less than the direct cost of that CD. We have never said anything different. We're saying that they have arbitrarily chosen to put 500 pages on a CD and that if they were to fill that CD to capacity, the direct cost of making that CD is... I guess the question I'm asking is this. It just seems to me the number of CDs almost seems artificial because what's really going on is how many documents are at issue. I mean, they could be apportioned among a number of CDs or they could be all dumped into one CD. It doesn't matter because the cost of a CD is negligible. Correct. So what we're really talking about is if there's an adequacy of a showing that the cost is reasonable for the number of documents. Exactly, Your Honor, and that is the core of this argument is when they break it up into CDs and the number 23,898 was just simple math. They gave us 496 pages. It filled up 100 and something megs. We just did the math and said if all the pages were that size, you could fit 23,898 pages on a CD. Because they broke it up, they are charging more than FOIA allows them to charge. They're charging more than the direct cost of reproducing those documents, not those CDs, but those documents. And the policy reason that they give for doing this after they get past the argument of, oh, we're not actually charging more, they say, well, it serves great policy reasons because it expedites the processing of the FOIA requests at every step of the process, which is physically impossible. Limiting the number of documents you put on a single CD has nothing to do with how many documents are processed. But it has everything to do with their workflow. I mean, if they say we'll go through 500 documents and disclose those for this requester, then they can move on to the next requester so that they can basically try to please everybody some. They're not going to please everybody 100%, but that's their explanation, right? What's unreasonable about doing things that way? Because you made an honest mistake that they have tried to get every judge to make. You equated processing with release. If they review 2,000 pages and of those 2,000 pages, only 400 are releasable, they then keep reviewing until they get to 500 pages, and then they release. The people who are reviewing the documents and redacting the documents and deciding what to release are doing that before it ever gets to the release stage, before it ever gets to the burning onto CD stage. And they have tried to say that, oh, well, we didn't mean to say that 500 pages per CD was something that happened early on. And, in fact, the judge took that and said nothing in the FBI's discussion of its process suggests that the 500 pages on a given CD have traveled through the entire review process as a single batch. However, that is exactly what they said in their declaration. And after this case, just two weeks ago, they reversed their position again in another case against before Judge Chutkan, in which they argued that the 500 pages per CD meant that they could only process 500 pages per month, not release a document full of 500 pages per month, but process them. And if there are 499 redacted pages, that CD for that month would only contain one CD. And they explicitly disclaimed my argument that this case, the judge adopted their argument that they were releasing 500 pages. Is that a record before us? It is not because it just happened two weeks ago. I'm happy to supplement the record with that. Well, I don't know that you can supplement the record. Well, I'll defer to my more senior colleagues on that. I figured since it was only two weeks ago, filing something on paper would be easier just to talk about today. And then you can allow me to file it if you want to. But that's really what it comes down to. Every single time the FBI makes an argument and I shoot it down, they change that argument and say, oh, that's not what we meant. And then I shoot that down. Then they change it again. And they keep doing it for litigation advantage. They keep doing it in bad faith. The bad faith in this case, the sterling example of bad faith in this case is what happened to the Truthout request, which is also unfortunately not in the record because it happened during the processing of this appeal, where Truthout said in its administrative appeal, we agree to pay the $765 if OIP rejects our fee waiver appeal. And then OIP rejected it. We sued. Everything happened. It came before the district court. It came before this court. And right after I wrote my brief in this case, I emailed the attorney for the FBI. And I said, so by the way, how are you all doing on that request since we already agreed to pay? And the response was, the agency does not consider that conditional statement to OIP to be an adequate fee commitment. Therefore, the request remains administratively closed. Truthout did not make a commitment to the FBI to pay that amount. So after all of this, after we said, okay, we will pay $765 if we lose the fee waiver fight, they said, well, too bad. We're closing the request because you didn't say you'll pay it now. You said you'll pay it if you lose. That's not good faith FOIA. And that's not good faith litigation. And that's what keeps happening in this case. They keep setting up a moving target. I know that you don't think the FBI is doing this for the reasons that they say they're doing it. But if, in fact, they were doing it because it did allow them to expedite the information and keep it moving, they have some time limitations that they're supposed to meet, right? So if that were true, if they were doing that, would you still be arguing that the requirement that the fees be reasonable precludes them doing that? That's a very difficult question to answer. Am I over time? Am I reading this correctly? Well, yes, you are. But you can answer my question because I asked. Okay. The first answer, there are two related answers. The first answer is if they were doing that for that reason, and they had a good reason to do that and the science and math backed it up, I would argue that they have to prove that. They can't ask you to speculate about the reason or Judge Shetkin to speculate that they might be doing it and fill in the blanks where they provided no evidence. If they did provide the evidence that this does speed things up, they would still have to provide the evidence that they are not charging more than the direct cost. This isn't a reasonable cost issue. This is a direct cost issue. Reasonable is in the eye of the beholder. Direct is direct. And the FOIA says they cannot charge more than the direct cost. And if they are charging more than the direct cost, no matter how much more efficient it is, they can't do it. All right. Thank you. Good morning, Your Honors. May it please the Court, Brian Hudak from the U.S. Attorney's Office on behalf of the Department of Justice. DOJ asks that this panel affirm the decision of the district court as it was correctly reached in this case. First, as to the release policy claims concerning the FBI, neither NSC nor Stein are properly before this panel at this time. NSC's claims are moot as admitted by NSC in its district court briefing and not addressed in its reply before this panel. Stein never exhausted his administrative remedies. He didn't take the required step to file an administrative appeal with the FBI. These undisputed facts deprive the appellants in this case from continuing this litigation. As to the merits of the release policy claims, a little background is probably will be helpful for the court. The requesters are right. This concerns the last of three general phases of a discovery of a FOIA response. The first is searching. The second is reviewing the documents for what is releasable. And the third is the production or the duplication of those documents for release. This concerns only the third part, not the second or the first part. And the question here is whether the fees are… I'm not understanding that because I thought that the FBI affidavit talks about the amount of time it takes and includes salaries of individuals for reviewing the documents under the integrity program. The integrity program is part of the production phase, Your Honor. It's the last step in the production phase. It runs through the integrity scan to produce the documents onto a CD. And the integrity scan is necessary to take the documents from what is a classified system to an unclassified environment that is releasable to the public. So semantically, you don't consider that to be review. You consider that to be production. That's production, and it's not challenged in this case that those are production costs. The DOJ regulations indicate they are. And appellants do not challenge it in this action that those are appropriately production costs under the production or duplication fee provision. What their challenge is is that the costs of the production of electronic CD exceed the direct costs that the agency incurs and that the costs are not reasonable. And under FOIA, the cost for production or duplication needs to meet three standards. One, that they be standard. Two, that they be reasonable. And three, that they not exceed the direct costs that the agency incurs in producing the electronic media. Can you just explain to me what the integrity software does? Because I didn't really clean that up. Sure. It's my understanding, Your Honor, that it's a program where you load PDFs into the program and through an optical character recognition, or if there is text underneath the PDFs, it goes through that text, the text that is going to be released, to ensure that information of a national security concern or confidential informants or other information that should not be released to the public isn't being released on a FOIA CD. And it's an automated process that uses terms that have been refined by the FBI during their experience with FOIA and dealing with these type of records to identify whether there is anything that has mistakenly been deemed releasable that shouldn't be released to the public. And so it goes through that and it scans every page using this character recognition process. And at the end of the day, if everything is fine, then the CD is released. During that period of time, if it catches words, the processor needs to look at what is on the page, what is being caught by the integrity scan, and determine whether or not that information is indeed releasable or should be subject to further review by the agency subject matter experts and the review staff. On that, is the processor doing that in real time, or does that happen at the very end? I don't think the record is clear on when the processor is doing it. It's my understanding the processor is sitting in front of their computer, and that's what I think the declaration implies is that the processor is sitting there, that the scan generally takes around 50 minutes for a 500-page CD, and that they are sitting there actively in front of the terminal addressing any issues that pop up. But, Your Honor, so the three questions are, is it a standard, is it reasonable, and did it exceed the direct costs? Appellants concede that the direct costs are not exceeded. At least with a 500-page CD, it costs more than $15 to run the integrity scan. They don't contest that it's standard, that this is a standard policy. Certainly, there are exceptions, and they note there's exceptions in the record, and a standard policy can be subject to exceptions. In fact, this Court has encouraged agencies to exercise this discretion to create exceptions where the purposes of FOIA, that is the release of information, would benefit the public. And so the question really was down to reasonable. At 500 pages per CD that is being charged at a $15 per CD rate, that comes to 3 cents a page. There is nothing in the record that indicates 3 cents a page for electronic processing is unreasonable charge. In fact, this Court charges 10 cents a page to access documents off of its pacer system. I mean, I get that point, but there's something to the notion on the other side that if it costs $15 for 500 pages, and it's actually true that it costs zero for every additional page, then you can't, it seems to me there's an argument that it's unreasonable to tack on another $15 for the next 500 pages. I would agree, Your Honor, but due to the nature of the scan and what is in the record, and the fact that these are undisputed facts in the record, and the issues of whether or not this is a linear cost model or whether it's a converging cost model or some sort of, some model different than each incremental page adds an incremental cost to the scan. And given that it's a scan and it's actually scanning the pages, it seems to be linear. And there's no support other than speculation from the felons that it would be anything but. I mean, if it was linear, the case would be over because it just, or it would be close to be over because it does seem to me that if it's true that every additional page has the same, requires the same charge as the pages before, then if $15 for 500 pages is reasonable, then $30 for 1,000 pages is reasonable. But I think the question is whether it, in fact, is linear. Yes, Your Honor, and I would agree that it's not particularly clear from the record whether it is linear in the declaration, but the declaration does, there's nothing else in the record to indicate it's not. I mean, it's a scan, and the scanning process like you scan Xerox pages or when you do optical character recognition on a PDF in your office, it takes time for each page because it needs to go through the content of each page to determine whether the information is releasable or not. And because the time would be linear, the cost would be linear because we're dealing with labor hours here. Moving to the... Is there anything in the record about the time for the integrity software? Let's suppose that there were 1,000 pages on the CD instead of 500. Is there anything in the record about how long the integrity scan for 1,000 pages would take? Would it take precisely double the amount of time that it would if there were only 500 pages on the CD? The record isn't that precise, Your Honor, but I do direct the panel to Joint Appendix page 60, where the Hardy Declaration does note that the amount of time it takes to set up and run integrity increases as more pages are added that need to be scanned and or as more search terms are added to run the integrity search protocol. So, I mean, there is testimony in the record that is undisputed that it does take more time to process more pages, indicating it is a linear process or close to linear process. Maybe there is a certain portion that's an upfront cost, but there is going to be an incremental increase for the more pages that are added to the process. Turning to the second issue... It doesn't say linear, and it doesn't... It's true that there's more costs, and if the ratio... I mean, the other side says they did a calculation, and if the ratio was... It would have to be more than 30%. And I don't think that... I mean, that's just straight arithmetic. And so if it was 100%, which would be linear, then we're done. But it does say it costs more. I guess we don't know to a moral certainty from this that it's actually linear. Right. And if we were going with a moral certainty standard, Your Honor, I would agree that that's not there. But I don't think there's any genuine issue of material fact in the evidence, in the record that the district court considered, that gave a dispute as to that fact. There is no alternative. The fact that it costs more, that it does, in fact, cost more per page, that's undisputed. Correct, Your Honor. Shifting to the second issue just briefly, the fee waiver from the Civil Division of the Department of Justice, NSC failed to satisfy two of the four factors at issue here. The third factor NSC did not satisfy. It did not show that the disclosure would contribute to the understanding of a reasonably broad audience of persons interested in the topic. And this really boils down to two considerations. One, is the information going to be meaningful to the public or some segment of the public? And the raw data here isn't in and of itself meaningful to the public. NSC purports that it's going to take some sort of analysis or statistical sampling of this information to provide meaning to that information, but didn't provide the agency, again, the record before the agency is what this panel is reviewing, didn't provide the agency any information on how it was going to do that. More fundamentally, the second component of this is that they need to have a dissemination technique that will reach a reasonably broad audience of people. The only thing they identified was it was going to be posted on their website. Without any hidden information on that website, is this a website that a reasonably large group of people go to to gain information on this topic or anything that the agency could use to ascertain that this standard was met? And lastly, NSC failed to show that the information is going to significantly increase public understanding, especially in light of the plethora of publicly available materials that are out there as to who represents agencies in FOIA litigation, whether it be PACER searches, whether it be reported decisions from this panel and other courts, whether it be FOIA statistics information that are publicly available on FOIA.gov. The information is already out there, and listings of who represents the government and the declarations themselves don't significantly add to the public understanding of how the government litigates FOIA. Thank you very much. The Department of Justice asks that the district court's judgment be affirmed. Thank you. You were out of time, but we will give you back a minute for rebuttal. Okay. I'll be very quick, Your Honor. You'll notice that many times when he was speaking, he said the declaration implies what is in the record. Well, unfortunately, the record isn't clear on that. The reason for this is that the FBI gave an entirely conclusory declaration. We challenged it, and they did not supplement it. They were given their opportunity to provide all of the evidence that you wanted, all of the evidence that you wanted, all of the math, all of the reasons. They did none of that. There is a genuine issue of material fact, not because we offered extraneous information. Did you seek discovery? Yes, Your Honor. Did you argue before us that there was some sort of an abuse of discretion in not being allowed to pursue discovery in this case? Before you? I don't know. You're arguing that there's some sort of a disputed fact here. I'm trying to understand exactly what your argument is. Because I don't think that you've made the argument to us on appeal that you should have been able to pursue discovery. No, Your Honor. I have implied it, but the primary argument I made is that, A, you have de novo review, and so you can reverse this, or B, at the very least, you should remand it to the district court to order supplemental declarations, as is normally the case in FOIA cases. And that's what that is. The second point, and can I continue? I'll make it very quick, and then I can answer any questions about civil. The linear progression, it may be a linear progression, it may not. We have no knowledge. The only reason that it might even be a linear progression, though, is that they charge automated time. He described a system in which they type in some search terms, and they hit enter, and it scans the system, and they would have you believe based on implications, not outright statements, and not outright implications in the declaration, that a human being is sitting there twiddling their thumbs while this thing is running for 50 minutes. That is not likely. And, in fact, in the declaration it says that after integrity is run, a processor goes and fixes anything it found, not during, after. They cannot charge for automated computer time when a human being, whether it be GS-11, GS-12, GS-13, is not sitting there. All right. Thank you very much. Thank you, Your Honors.
judges: Brown, Srinivasan, Wilkins